UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| JONATHAN RODEN,<br>　　　　　　Plaintiff,<br>v.<br><br>SERNA LANDFAIR, KRISTINE<br>AUSTIN, and NOAH NAGY,<br>　　　　　　Defendants.<br>_____/ | Case No.: 22-10186<br><br>Matthew F. Leitman<br>United States District Judge<br><br>Curtis Ivy, Jr.<br>United States Magistrate Judge |

### REPORT AND RECOMMENDATION ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 16, 20) AND PLAINTIFF'S MOTION FOR EVIDENTIARY HEARING (ECF No. 23)

**I.　　PROCEDURAL HISTORY**

Plaintiff Jonathan Roden filed this civil rights matter without the assistance of counsel on January 19, 2022, against two Michigan Department of Corrections employees, Serena Landfair[1] and Noah Nagy ("MDOC Defendants"), and a Corizon Medical provider, Kristine Austin. (ECF No. 1). He alleges violations of the Eighth Amendment to the United States Constitution. During May 2022, the MDOC Defendants and Defendant Austin separately moved for summary judgment based on failure to exhaust administrative remedies. (ECF Nos. 16, 20).

---

[1] In the caption of the complaint, Plaintiff spelled this defendant's name "Serna" but in the body of the complaint he spelled it "Serena." "Serna" appears to be a typographical error. This defendant spells her name "Sirena" in her brief. (ECF No. 16).

Plaintiff responded with a motion for an evidentiary hearing to resolve issues of material fact. (ECF No. 23). This case was referred to the undersigned for all pretrial matters. (ECF No. 28).

For the reasons below, the undersigned **RECOMMENDS** that the motions for summary judgment be **GRANTED IN PART, DENIED IN PART**, and Plaintiff's motion for evidentiary hearing be **DENIED**.

## II.   BACKGROUND

### A.   Complaint Allegations

Plaintiff's medical claim concerns the care he received at the G. Robert Cotton Correctional Facility. Plaintiff alleges that he injured his shoulder on August 8, 2021, when he tried to reposition himself in his bunk. The pain was severe. As a result of the injury, his clavicle was tender and he could not swallow food. (ECF No. 1, PageID.3, ¶ 10). The next day he was placed in segregation. On August 10, 11, and 12, 2021, he requested medical attention because he was in pain and unable to swallow food. (*Id.* at ¶ 12-14). On August 12, 2021, a non-party nurse falsely claimed to have evaluated his shoulder. (*Id.* at PageID.4, ¶ 15). On August 14, 2021, Plaintiff was placed on hunger strike designation. He submitted a kite, or letter, explaining that he was not on a hunger strike, but he could not swallow and needed to be seen by a doctor. (*Id.* at ¶ 17). He explained the same on the following day, but was told to send a kite to Defendant Landfair.

He wrote a grievance that day about this issue. (*Id.* at ¶ 18). On August 16, 2021, Plaintiff told several employees he was not a hunger strike, including Defendant Warden Nagy. Defendant Nagy only smiled at Plaintiff and walked away. (*Id.* at PageID.5, ¶ 19).

Plaintiff asserts that Landfair and Austin placed him on hunger strike designation without an evaluation including to his shoulder. Neither defendant responded to Plaintiff's kites. (*Id.* at ¶ 20).

He could not eat between August 9 and 18, 2021. During that time, he lost over 20 pounds. On August 18, he transferred out of segregation. On his request to the unit desk officer, Plaintiff was seen at the health clinic by Defendant Austin and sent to Henry Ford Allegiance Hospital for his shoulder injury. (*Id.* at PageID.6, ¶ 22).

Plaintiff alleges that Landfair and Austin were deliberately indifferent to his medical needs and violated MDOC policy and procedures about hunger strikes and emergency health care treatment. He states that, as a result of their indifference, he lost movement in his right arm, has numbness in his neck, and severe pain in his shoulder. He also states that they maintained a policy of denying care to save money. He alleges that Nagy was deliberately indifferent to his needs and he failed to protect Plaintiff from the inhumane treatment. (*Id.* at ¶¶ 27-28).

Attached to Plaintiff's complaint are medical records, an MDOC policy directive, and grievance forms. He provided a cover page for his affidavit, but the affidavit is not attached.

B.      Instant Motions for Summary Judgment

According to Plaintiff's MDOC grievance report, he filed two grievances to Step III during August and September 2021. In August, he filed JCF-21-08-1340-28e ("JCF-1341"), and in September he filed JCF-21-09-1454-28j ("JCF-1454"). The defendants argue neither grievance serves to exhaust the claims against them.

The MDOC Defendants contend that the JCF-1341 Step III was rejected because Plaintiff did not include the Step II response in the appeal. They also argue that Plaintiff did not complete the three-step process until after he filed this complaint. Because of these procedural errors, the defendants contend that this grievance does not exhaust any claims. (ECF No. 16, PageID.95-96). As for JCF-1454, they argue the complaint in that grievance is irrelevant to the claims here, and therefore it does not exhaust any claims. (*Id.* at PageID.96).

Defendant Austin argues that JCF-1341 does not exhaust any claims because of the procedural errors at Step III and because she did not become involved with Plaintiff until after he filed the initial grievance. (ECF No. 20, PageID.189-90). She also argues that Plaintiff did not submit a grievance concerning some of his claims — that he lost movement in his right arm and suffered numbness in his neck

4

or that Defendant maintains a policy of denying care to save money. (*Id.* at PageID.191).

In response (in his motion for evidentiary hearing), Plaintiff asserts that the grievances submitted by both defendants were manufactured. Specifically, he alleges that the defendants copied his Step II reasons for appeal onto the Step II/III appeal form for the appeal at Step III. He attached a copy of the actual grievance to his response/motion (the copy is attached to the complaint, not this motion). (ECF No. 23, PageID.215). He contends the defendants forged medical and psychological assessments to put him on hunger strike designation. He says the defendants prevented him from properly exhausting the claims because of the manufactured form. (*Id.*).

### III. DISCUSSION

#### A. Standard of Review

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light

most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004).

"The moving party has the initial burden of proving that no genuine issue of material fact exists. . . ." *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotations omitted); *cf.* Fed. R. Civ. P. 56(e)(2) (providing if a party "fails to properly address another party's assertion of fact," then the court may "consider the fact undisputed for purposes of the motion"). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). The nonmoving party must "make an affirmative showing with proper evidence in order to defeat the motion." *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009); *see also Lee v. Metro. Gov't of Nashville & Davidson Cty.*, 432 F. App'x 435, 441 (6th Cir. 2011) ("The nonmovant must, however, do more than simply show that there is some metaphysical doubt as to the material facts, there must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a genuine dispute.") (internal quotation marks and citation omitted). In other words, summary judgment is appropriate when "a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a

showing sufficient to establish an essential element of its case. . . ." *Stansberry*, 651 F.3d at 486 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

That Plaintiff is *pro se* does not reduce his obligations under Rule 56. Rather, "liberal treatment of *pro se* pleadings does not require lenient treatment of substantive law." *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 344 (6th Cir. 2006). In addition, "[o]nce a case has progressed to the summary judgment stage, . . . 'the liberal pleading standards under *Swierkiewicz [v. Sorema, N.A.*, 534 U.S. 506, 512-13 (2002)] and [the Federal Rules] are inapplicable.'" *Tucker v. Union of Needletrades, Indus. & Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005) (quoting *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004)). The Sixth Circuit has made clear that, when opposing summary judgment, a party cannot rely on allegations or denials in unsworn filings and that a party's "status as a *pro se* litigant does not alter [this] duty on a summary judgment motion." *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010); *see also United States v. Brown*, 7 F. App'x 353, 354 (6th Cir. 2001) (affirming grant of summary judgment against a *pro se* plaintiff because he "failed to present any evidence to defeat the government's motion").

B. <u>Exhaustion under the PLRA</u>

Under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e *et seq.*, a prisoner may not bring an action "with respect to prison conditions under

7

section 1983 of this title, or any other Federal law . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Congress enacted the provision to address the "outsized share" of prisoner litigation filings and to ensure that "the flood of nonmeritorious claims does not submerge and effectively preclude consideration of the allegations with merit." *Jones v. Bock*, 549 U.S. 199, 203-04 (2007). Put another way, the purpose of § 1997e(a) is to "reduce the quantity and improve the quality of prisoner suits[.]" *Porter v. Nussle*, 534 U.S. 516, 524 (2002). In addition, exhaustion "gives an agency an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court, and it discourages disregard of [the agency's] procedures." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006) (internal quotation marks and citation omitted).

"There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones*, 549 U.S. at 211. The prison's grievance process determines when a prisoner has properly exhausted his or her claim. *Id.* at 218 ("The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."). Even where a prisoner has made some attempts to go through the prison's grievance process, "[t]he plain language of the statute makes

8

exhaustion a precondition to filing an action in federal court." *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999).

The prisoner "may not exhaust administrative remedies during the pendency of the federal suit." *Id.* (citations omitted); *see also Woodford*, 548 U.S. at 95 ("A prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction. . . ."). That said, "the PLRA and Federal Rule of Civil Procedure 15 permit a plaintiff to amend his complaint to add claims that were exhausted after the commencement of the lawsuit, provided that the plaintiff's original complaint contained at least one fully exhausted claim." *Mattox v. Edelman*, 851 F.3d 583, 595 (6th Cir. 2017).

Finally, "inmates are not required to specifically plead or demonstrate exhaustion in their complaints." *Jones*, 549 U.S. at 216. Instead, failure to exhaust administrative remedies is an affirmative defense under the PLRA. *Id.* As a result, defendants bear the burden of proof on exhaustion. *Surles v. Andison*, 678 F.3d 452, 456 (6th Cir. 2012) ("A PLRA defendant bears the burden of proving that a PLRA plaintiff has not exhausted his administrative remedies.").

    C.    <u>Grievance Procedures at MDOC</u>

Pursuant to Policy Directive 03.02.130, dated March 18, 2019, the administrative remedies available at the MDOC are as follows. First, the inmate

must attempt to resolve issues with the staff member involved within two business days of learning about a grievable issue. (ECF 16-2, PageID.104, at ¶ Q). If the issues are not resolved within five business days, the inmate may file a Step I grievance using the appropriate form. (*Id.*). If the inmate is dissatisfied with the Step I disposition, or does not receive a response by ten business days after the due date, he or she may file a Step II grievance using the appropriate form. (*Id.* at PageID.106, ¶ DD). Similarly, if the inmate is dissatisfied with the Step II response or does not receive a response by ten business days after the due date, the inmate may file a Step III grievance. (*Id.* at PageID.107, ¶ HH). The matter is fully exhausted after the disposition of the Step III grievance. *Surles*, 678 F.3d at 455 ("A grievant must undertake all steps of the MDOC process for his grievance to be considered fully exhausted.").

   D.   Analysis

      1.   JCF-1454

This grievance does not exhaust any claims in this case. It was written against Defendant Nagy for refusing to respond to an appeal on a grievance about being placed in a COVID shower even though he did not have the virus. (ECF No. 16-3, PageID.127). He did not lodge a complaint against Nagy for this inaction here. For these reasons, this grievance is irrelevant to the claims.

      2.   JCF-1341

To begin, Plaintiff's claim that the defendants submitted an altered copy of his grievance is not borne out in the documents. He asserts that they "superimposed" the reason he gave for his Step II appeal in the section for the Step III appeal. (ECF No. 23, PageID.215). He says the copy he provided is the correct copy. In his submission of the grievance, the Step II and III appeal form is filled out at step II but blank at Step III. (ECF No. 1, PageID.46). He did not attach a version of that form completed to Step III. The defendants submitted Plaintiff's Step II and III appeal form. But this version is nearly unreadable except for what appears to be same typewritten text in the Step II reason for appeal and the Step III appeal, which is a clear, handwritten statement that the issues have not been resolved and that the Step II response was not received. (ECF No. 16-3, PageID.121). The Step II reason for appeal was not "superimposed" in the space for the Step III reason for appeal. And, in any event, neither defendant argues that Plaintiff did not submit a Step III appeal. Their main argument focuses on the reason the appeal was rejected. Plaintiff's argument about a forged Step III appeal does not provide a reason to deny the defendants' motions.

The Defendants' assertion that JCF-1341 does not exhaust claims because of a procedural error lacks merit. Plaintiff's Step III appeal was rejected because he did not provide the Step II response with his appeal. (ECF No. 16-3, PageID.120). But MDOC grievance policy does not require a grievant to attach all relevant

11

documents from Step II to the Step III appeal. The policy states, "[t]o file a Step III grievance, the grievant must send a completed Step III grievance, using the Prisoner/Parolee Grievance Appeal form (CSJ-247B), to the Grievance and Appeals Section within ten business days after receiving the Step II response. . . ." (ECF No. 16-2, PageID.107). The Step II/III grievance appeal form directs the grievant to attach the Step I response to a Step II or III appeal, but it does not require the grievant to attach the Step II response to the Step III appeal. (ECF No. 16-3, PageID.121). Moreover, prison policy expressly prohibits rejecting a grievance for failure to include exhibits or other documentation related to the grievance. (ECF No. 16-2, PageID.102, ¶ H) (this subparagraph goes further to state, "If the grievance references documents that are not in the prisoner's files or otherwise available to the Grievance Coordinator or respondent except through the prisoner, the documents shall be reviewed with the prisoner as part of the grievance investigation process if necessary to respond on the merits."). Indeed, a prisoner can submit a Step III appeal without ever receiving a response at Step II, and thus without attaching a Step II response.

      The defendants also argue that Plaintiff did not complete the grievance process before he filed this lawsuit, and therefore the grievance cannot exhaust the claims here. They note that the Step III rejection was mailed to Plaintiff on March 22, 2022. (ECF No. 16-2, PageID.120). Plaintiff filed his complaint on January

12

19, 2022, well before the prison responded at Step III. Even so, this argument also lacks merit. The Court must draw all reasonable inferences in Plaintiff's favor. It is reasonable to infer that he timely submitted his Step III appeal considering the appeal was not rejected as untimely. To be timely, he would have submitted that appeal before January 19, 2022. The facts and reasonable inferences indeed suggest he submitted his Step III well before he filed this complaint. The Step II response provided by Plaintiff with his complaint is dated September 30, 2021. (ECF No. 1, PageID.47). MDOC grievance policy requires that a Step III appeal be filed within ten business after receiving the Step II response or, if no response is received, within ten business days after the response was due. On Plaintiff's copy of his Step II appeal, there is a handwritten note that he received the Step II response on October 1, 2021; the undersigned will assume he received the response on that date. The Step III appeal was due ten business days later, or by October 15, 2021. Again, we can infer he timely submitted the appeal. The Policy Directive states that Step III responses are "[g]enerally" provided within 60 business days. (ECF No. 16-2, PageID.107, ¶ II). If Plaintiff filed his appeal on October 15, 2021, the prison's response was due on or around January 7, 2022. He filed the complaint after that date. Nor is there any statement in the policy directive or in case law requiring prisoners to wait until they receive a Step III response, however long that may take, before filing a lawsuit. What would happen to a potential

lawsuit if the prison never responded?  In short, Plaintiff did not file this lawsuit too soon.

The MDOC Defendants did not raise any additional arguments on JCF-1341. Their motion should be denied as to this grievance.

Defendant Austin further argued that the grievance does not exhaust the claim against her because, according to a medical record provided by Plaintiff, she did not become involved with Plaintiff until after he filed the grievance.  (ECF No. 20, PageID.190).  That medical record, dated August 18, 2021, is an administrative note following a clinical encounter between Plaintiff and Austin for his right shoulder.  Austin sent Plaintiff to the hospital that day for further evaluation.  (ECF No. 1, PageID.20).  Plaintiff's claim against Austin is not about the encounter and being sent to the hospital.  He claimed Austin was deliberately indifferent to his medical needs by not examining his shoulder despite his complaints of pain and being unable to swallow food before August 18th.  (*Id.* at PageID.44).  Plaintiff's grievance describes the allegedly inadequate medical care about which he sues Austin in this Court.  Austin's argument that she was not involved in the alleged conduct until after he filed the grievance is more appropriately addressed in a motion challenging the merits of the claims.  At this time, the question is whether Plaintiff exhausted his claims against Austin.  In the view of the undersigned, it does.

14

Lastly, Austin argues that Plaintiff's claim that, because of the deliberate indifference, he lost movement in his right arm, has numbness in his neck, has pain in his shoulder, and that the defendants maintained a policy of denying care to save money were not listed in the grievance, and are thus not exhausted by it.[2] (ECF No. 20, PageID.191). It is not entirely clear that these claims were intended as separate claims for which Plaintiff seeks monetary damages; the gravamen of the complaint is the lack of care between the initial injury and being treated on August 18, 2021.

If they were intended as separate claims, the last of these claims is not exhausted in JCF-1341. Plaintiff did not write about a policy of denying care. This claim is separate from his allegations in the grievance that he was denied care for his shoulder and wrongfully designated on hunger strike despite his kites and explanations otherwise. A claim about maintaining a policy to deny care to save costs was not exhausted and should be dismissed.

The other claims—loss of movement, numbness, and pain resulting from the lack of care—are a closer call. These claims are, in a sense, forward looking. In the grievance, dated August 15, 2021, he complained that he was, at that time, not receiving medical care for his shoulder and swallowing issues. This grievance put prison officials and defendant Austin on notice of an alleged shortcoming until he

---

[2] Plaintiff did not address this argument in his motion for evidentiary hearing.

was evaluated by Austin. In these other claims he effectively complains of a separate injury or issue—he now has trouble with the shoulder because of the lack of care earlier in August 2021. Plaintiff did not specifically grieve the consequences he continues to experience because of the alleged lack of care during August 2021. So he did not put prison officials on notice of these legal claims.

    E.    Conclusion

In sum, the undersigned recommends both motions for summary judgment be granted as to grievance JCF-1454, but that MDOC Defendants' motion be denied as to grievance JCF-1341. Defendant Austin's motion should be granted as to the claims that he lost movement in his right arm, has numbness in his neck, has pain in his shoulder, and that the defendants maintained a policy of denying care to save money, but denied as to the gravamen of the complaint—Austin's failure to treat him and placing him on hunger strike designation without an evaluation while he was in segregation. Plaintiff's motion for an evidentiary hearing should be denied.

**IV.    RECOMMENDATION**

For the reasons set forth above, the undersigned **RECOMMENDS** that Defendants' motions for summary judgment (ECF Nos. 16, 20) be **GRANTED IN PART, DENIED IN PART** and Plaintiff's motion for an evidentiary hearing (ECF No. 23) be **DENIED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Loc. 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2), Local Rule 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  October 17, 2022                    s/Curtis Ivy, Jr.
                                                             Curtis Ivy, Jr.
                                                             United States Magistrate Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that this document was served on counsel of record and any unrepresented parties via the Court's ECF System or by First Class U.S. mail on October 17, 2022.

                                                             s/Sara Krause, acting in the
                                                             absence of Kristen MacKay,
                                                             Case Manager
                                                             (810) 341-7850